

ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 25 2005

CLERK, U.S. DISTRICT COURT
BY _____
DEPUTY

| | | |
|---|---|---|
| LUIS NARVEZ MARTINEZ, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:04-CV-0825-A |
| | § | |
| DOUGLAS DRETKE, DIRECTOR, | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, CORRECTIONAL INSTITUTIONS | § | |
| DIVISION, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the

provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for

the Northern District of Texas.  The Findings, Conclusions, and Recommendation of the United

States Magistrate Judge are as follows:

## I. FINDINGS AND CONCLUSIONS

### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B. PARTIES

Petitioner Luis Narvez Martinez, TDCJ #1002457, is a state prisoner in custody of the Texas

Department of Criminal Justice, Correctional Institutions Division, in Cuero, Texas.

Respondent Douglas Dretke is the Director of the Texas Department of Criminal Justice,

Correctional Institutions Division.

### C. FACTUAL AND PROCEDURAL HISTORY

In February 2000, Martinez was charged by separate indictment with possession of four

grams or more but less than two hundred grams of cocaine and possession of less than fifty pounds but more than five pounds of marihuana in Tarrant County, Texas. (1Clerk's R. at 3; 2Clerk's R. at 3.)[1] Each indictment also included an enhancement paragraph, alleging a prior 1990 felony conviction for attempted murder. On August 24, 2000, a jury found Martinez guilty of the charges, and, on August 25, 2000, Martinez pled true to the enhancement allegation and the trial court assessed his punishment at twenty-five and twenty years' confinement, respectively, and a fine in each case. The Second District Court of Appeals of Texas affirmed the trial court's judgments on April 18, 2002. *Martinez v. Texas*, Nos. 2-00-339-CR & 2-00-340-CR, slip op. (Tex. App.–Fort Worth Apr. 18, 2002) (not designated for publication). In turn, on February 18, 2004, the Texas Court of Criminal Appeals affirmed the judgment of the appellate court. *Martinez v. Texas*, 127 S.W.3d 792, 795 (Tex. Crim. App. 2004). Martinez did not seek writ of certiorari. (Petition at 3.) Martinez filed this federal petition for writ of habeas corpus on November 2, 2004.

## D. ISSUES

In one ground, Martinez contends the state court applied the incorrect standard in determining the voluntariness of his confession to law enforcement. (Petition at 7 & Pet'r Memorandum of Law at 1-5.)

## E. RULE 5 STATEMENT

Dretke contends that Martinez has failed to exhaust his state remedies on the claim presented as required by 28 U.S.C. § 2254(b)(1)(a) because Martinez challenged the voluntariness of his confession only on state law grounds in his petition for discretionary review. (Resp't Answer at 4-

---

[1]"1Clerk's R." refers to the trial court clerk's record for cause no. 0754183D; "2Clerk's R." refers to the trial court clerk's record for cause  no. 0754185D.

7.) Having reviewed Martinez's petition for discretionary review, it appears Dretke's assertion is correct. Martinez relies solely on state case law, in conjunction with article 38.21 of the Texas Code of Criminal Procedure, and only tangentially refers to the Fifth Amendment of the United States Constitution and generally to Supreme Court holdings on the issue. *Martinez v. Texas*, PDR No. 1123-02, at 6-8. The Texas Court of Criminal Appeals, however, apparently implied a federal constitutional question from these references. *Martinez*, 127 S.W.3d at 794 & n.1. Thus, notwithstanding Martinez's attempt to recast his state claim as a federal constitutional claim by citation to specific Supreme Court case law, the merits of his claim are considered. *See* 28 U.S.C. § 2254(b)(2).

## F. DISCUSSION

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S.

3

at 407-08.  The statute further requires that federal courts give great deference to a state court's factual findings.  *Hill*, 210 F.3d at 485.  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  This presumption of correctness applies to both explicit findings of fact and those findings of fact implicit in the state court's mixed law and fact conclusions.  *Valdez v. Cockrell*, 274, F.3d 941, 948 n.11 (5th Cir. 2001).  The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Martinez claims that, in violation of state and federal constitutional law, the state court applied an incorrect standard to determine the voluntariness of his confession.  (Pet'r Memorandum of Law at 1.)  During the trial court proceedings, Martinez moved for and the trial court conducted a hearing outside the presence of the jury on the voluntariness of his confession, as required by *Jackson v. Denno*, 378 U.S. 368 (1964).  (1Clerk's R. at 20; 3Reporter's R. at 15-39.)  Testimony established that Martinez lived in a room at his father's upholstery shop, where he, his father, and his brother Eddie worked.  (3Reporter's R. at 31-32.)  All three were present at some point when law enforcement officers executed a search warrant of the premises based upon probable cause that Martinez or an individual known as "Eddie" was in possession of sizable amounts of cocaine and marihuana packaged for distribution.  (6Reporter's R., Defendant's Exhibit 1.)  After searching the premises and finding contraband, all three were arrested and taken to the police station.  (3Reporter's R. at 22-23.)  At the station, Detective Gerald Brown told Martinez that he needed to know who the contraband belonged to and who was "responsible" for it.  (3Reporter's R. at 23.)  Thereafter, Martinez gave the following written confession:

> I Luis Mtz. live at Lucky's Upholstery Shop, 2345 Dalworth #112.  The brick in the flap was another guys that I was holding for.  The scale I found in the other shop

4

owner stuff. The cocaine was for my personal use and the other on the bed was weed that I held for this other guy. My brother and dad had nothing to do with what had been found. (6Reporter's R., State's Exhibit 7.)

Martinez argued, as he does now, that his confession was involuntary because it was induced by the an *implied* promise by the detective that his relatives would not be charged in connection with the contraband. (3Reporter's R. at 38; Pet'r Memorandum of Law at 1.) According to the detective, Martinez "could have gathered" from his comment that charges would not be filed against his brother and father if Martinez accepted responsibility. (3Reporter's R. at 23.) The trial court denied Martinez's motion to suppress the confession and found that the statement was voluntarily given without coercion and was admissible in evidence. (*Id.* at 39.)

The state appellate court considered the issue in the context of article 38.21 of the Texas Code of Criminal Procedure.[2] TEX. CODE CRIM. PROC. ANN. art. 38.21 (Vernon 1979). As a matter of state law, for a promise to render a confession invalid for purposes of article 38.21 it must be (1) positive, (2) made or sanctioned by someone in authority, and (3) of such an influential nature that it would cause a defendant to speak untruthfully. *Henderson v. Texas*, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997); *Janecka v. Texas*, 937 S.W.2d 456, 466 (Tex. Crim. App. 1996).[3] The appellate court determined that the testimonies of the detective and Martinez, if believed, clearly established that there was an inducement by a person in authority, thus satisfying the second prong. The court considered the first and third prongs to be in dispute. Relevant to the first prong–i.e., whether the

---

[2]Article 38.21 provides: "A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed."

[3]To the extent Martinez's claim involves the state court's application of state statutory, case or constitutional law, his claim is not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

5

promise was positive, the appellate court considered it a question of fact for the trial court and noted

that the detective's statement to Martinez regarding joint possession as opposed to possession by

a single individual was a correct statement of the law. *Martinez*, Nos. 2-00-339-CR & 2-00-340-CR,

slip op. at 8.  The court also considered the third prong a question of fact for the trial court and

concluded that the record contained ample evidence to support the trial court's implicit

determination that Martinez had not satisfied the third prong of the test "in that he failed to show that

Brown's promise to him was sufficient to cause him to *falsely* confess to possession of the

contraband." *Martinez*, Nos. 2-00-339-CR & 2-00-340-CR, slip op. at 9 (emphasis added).

In turn, the Texas Court of Criminal Appeals addressed the issue.  That court stated that,

although it was unclear, if the appellate court had upheld the admissibility of Martinez's statement

because he had not shown his confession was false, that "would have been error because the truth

or falsity of a confession is irrelevant to a voluntariness determination not only under federal

constitutional law but also under state law." *Martinez*, 127 S.W.3d at 794-95.  It noted that the

determination is whether the officially sanctioned positive promise "would be likely to influence the

defendant to speak untruthfully" and not whether, the defendant in fact spoke untruthfully. *Id.* at

795.  In any event, the court concluded that the evidence supported the trial court's implied finding

that no positive promise was ever made by the detective to Martinez and it affirmed the appellate

court's judgment. *Id.*

Martinez first asserts that the appellate court erroneously based its conclusion regarding the

third prong on the truth or falsity of his statement, which is irrelevant to the issue of voluntariness

as a matter of Supreme Court precedent.  (Pet'r Memorandum of Law at 2.)  Although Martinez's

assertion is correct, this argument is moot.  The Texas Court of Criminal Appeals specifically

addressed, and agreed with, the argument and affirmed the appellate court's judgment on other grounds. *Id.* Martinez next asserts that the Texas Court of Criminal Appeals could not imply a finding of the trial court that no positive promise was made by the detective. (Pet'r Memorandum of Law at 4.) Under state law, however, where the trial court does not make explicit findings of fact regarding a suppression issue, an appellate court may imply all necessary fact findings that support the trial court's conclusion and uphold that conclusion on any applicable theory that finds support in the record. *Carmouche v. Texas*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).

As a federal constitutional matter, the test for determining the voluntariness of a confession is to ask what effect the totality of the circumstances had upon the will of the defendant.[4] *Arizona v. Fulminante*, 499 U.S. 279, 285 (1991). Police threats or promises are treated as part of the totality of the circumstances. *E.g., Miller v. Fenton*, 796 F.2d 598, 608 (3rd Cir. 1986); *United States v. Shears*, 762 F.2d 397, 402 (4th Cir. 1985). Thus, the mere existence of a threat or promise in connection with a confession does not render the confession per se involuntary. *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997). In this case, however, there is no evidence of a promise by the detective, explicit or otherwise, that charges would not be filed against Martinez's brother or father in exchange for his confession. At best, the evidence shows only that the detective's comment left that "impression" with Martinez. (3Reporter's R. at 23.) This is not sufficient to rise to the level of inducement or coercion. Even if the detective's comment could be perceived as a promise, Martinez's confession was not rendered involuntary by reason of his desire to extricate his

---

[4]Martinez cites to *Bram v. United States*, 168 U.S. 532, 542-43 (1897), for the standard in determining the voluntariness of a confession–i.e., whether the confession was extracted by any sort of threats or violence, or obtained by any direct or implied promises, however slight, or by the exertion of any improper influence. This standard does not reflect the current precedent, however, for making this determination.

family members from possible criminal charges. *Allen v. McCotter*, 804 F.2d 1362, 1364 (5th Cir. 1986); *United States v. Diaz*, 733 F.2d 371, 374-75 (5th Cir. 1984).

## II. RECOMMENDATION

Martinez has failed to satisfy the legal standard for habeas corpus relief set forth above, and his petition for writ of habeas corpus should be denied.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document. The court is extending the deadline within which to file, not merely place in the mail, specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until April 15, 2005. Failure to file specific written objections within the specified time shall bar a de novo determination by the district court of any finding of fact or conclusion of law and shall bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV. ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until April 15, 2005, to serve and file, not merely place in the mail, written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if

objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the  docket of the United States District Judge.

SIGNED March _25_, 2005.


CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE